UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

_____
                                        )
BRYAN P. NEWELL,                        )
                                        )
            Plaintiff,                  )
v.                                      )        Civil Action No. 15-10357
                                        )
AMERICA'S SERVICING COMPANY,            )
A DIVISION OF WELLS FARGO               )
BANK, N.A., AND HARMON LAW              )
OFFICES, P.C.                           )
                                        )
            Defendants.                 )
_____)

NOTICE OF REMOVAL

Defendant Wells Fargo Bank, N.A., incorrectly identified as "America's Servicing Company, a division of Wells Fargo Bank, N.A." ("Wells Fargo") gives notice, pursuant to 28 U.S.C. §§ 1441 and 1446, of the removal to this Court of a civil action commenced in the Norfolk County Superior Court (Massachusetts) identified below.  Removal is appropriate for the independent reasons that: (i) the claims in this case arise under the Constitution, laws, or treaties of the United States; and (ii) the amount in controversy exceeds the sum or value of $75,000 and the properly named parties are citizens of different states.  Therefore, this Court has original jurisdiction pursuant to either or both of 28 U.S.C. §§ 1331 and 1332.  In support of this removal, Wells Fargo states as follows:

I.      The Action

1.      Plaintiff Bryan P. Newell ("Plaintiff") filed a Complaint and Jury Demand (the "Complaint") against Wells Fargo and Harmon Law Offices, P.C. ("Harmon") in the Massachusetts Superior Court for Norfolk County on December 10, 2014.  The case is entitled Bryan P. Newell v. America's Servicing Company, a division of Wells Fargo Bank, N.A., and

Harmon Law Offices, P.C., Civil Action No. 14-01685 (the "Action").[1]  Plaintiff delivered a copy of the Complaint to Wells Fargo on or about January 13, 2015.  A copy of the Complaint is attached hereto as Exhibit A.  Removal is timely because this Notice is filed within 30 days of the date that Wells Fargo received the Complaint.

## II.     Pleadings And Notice To State Court

2.      Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81.1, certified copies of all pleadings, records, orders and proceedings from the Norfolk County Superior Court will be filed with this Court.  Contemporaneous with the filing of this Notice, Wells Fargo is giving notice to Plaintiff and will notify the Norfolk County Superior Court of this removal.  Harmon has indicated its assent to this Removal.

## III.     Statement Of Statutory Basis For Jurisdiction

3.      This Action is within the original jurisdiction of the United States District Court pursuant to 28 U.S.C. §§ 1331.  Alternatively, and as an independent and separate basis for Removal, this Action is within the original jurisdiction of the United States District Court pursuant to  28 U.S.C. § 1332.

## A.     This Court Has Jurisdiction Pursuant To 28 U.S.C. §§ 1331 (Federal Question)

4.      This Action is within the original jurisdiction of the United States District Court pursuant to 28 U.S.C. § 1331.  Section 1331 provides, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Plaintiff alleges in his Complaint that Wells Fargo violated the provisions of the federal Home Affordable Modification Program ("HAMP") by failing to

---

[1] This Action is substantively identical to a previous lawsuit filed by Plaintiff against Wells Fargo, entitled Bryan P. Newell v. America's Servicing Company, a division of Wells Fargo Bank, N.A., Civil Action No. 1:13-CV-11141-RGS.  That case was dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

provide him with a loan modification. HAMP is a federal mortgage modification program established and regulated by the U.S. Treasury having been expressly authorized to do by Congress under the Emergency Economic Stabilization Act of 2008. See 12 U.S.C. §§ 5219, 5220. In conjunction with HAMP, home mortgage servicers entered into agreements with the federal government (via its authorized departments and/or agencies) whereby servicers agreed to attempt to modify loans in exchange for compensation for successful modifications. While Plaintiff asserts a single state law claim, that claim is based entirely upon alleged violations of HAMP.

5.      Where a plaintiff's right to relief hinges on the resolution of a federal claim or issue, a federal question exists, despite a plaintiff's artfully pleaded complaint omitting any federal cause of action. Therrien v. Hamilton, 881 F. Supp. 76, 82 (D. Mass. 1995) ("Removal jurisdiction cannot be avoided simply by casting essentially federal law claims as state law claims."). Moreover, "a case may arise under federal law where the vindication of a right under state law necessarily turn[s] on some construction of federal law." Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 808 (U.S. 1986). Here, Plaintiff's Complaint repeatedly refers to and relies upon HAMP as the basis for relief. Indeed, Plaintiff asserts that "HAMP guidelines are, as a matter of law, the industry standard for mortgage servicing and loan modifications under state and federal law." See Compl. at ¶ 30. Although he does not identify his single cause of action as one brought directly under HAMP, that does not change the nature of his claim. When read on the whole, Plaintiff's cause of action under G.L. c. 93A is based solely upon allegations that Wells Fargo failed to comply with the federally established and run HAMP program. The issue is whether or not Wells Fargo complied with HAMP. This issue is a question of federal law, which requires consideration of

federal legislation and federal regulations, along with the interpretation of the federal HAMP directives.  Thus, Plaintiff's state law claim is intertwined with questions of federal law under HAMP.  As a result, this Court has jurisdiction over this action because Plaintiff's claim arises under the laws of the United States.

      A.     <u>This Court Also Has Jurisdiction Under 28 U.S.C. § 1332 (Diversity)</u>

      6.     This Action is within the original jurisdiction of the District Court under 28 U.S.C. § 1332, which provides, in pertinent part, that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States."  28 U.S.C. § 1332(a)(1).  This Action satisfies both of these statutory requirements.

      *i.*     *The Properly Named Parties Are Citizens Of Different States*

      7.     Plaintiff alleges that he is a resident of Quincy, Massachusetts.  Compl. ¶ 2. Wells Fargo is a national bank organized under the National Bank Act.  For diversity jurisdiction purposes, a national bank is a citizen of the state designated as its main office on its organization certificate.  28 U.S.C. § 1348; <u>Wachovia Bank, N.A. v. Schmidt</u>, 546 U.S. 303, 318 (2006).  Wells Fargo was, at the time of the filing of this action, and still is, a national banking association having its designated main office in South Dakota.  There is no dispute as to Wells Fargo's citizenship.  Plaintiff alleges that Wells Fargo, incorrectly identified as "America's Servicing Company, a division of Wells Fargo Bank, N.A.," has a principal place of business in Sioux Falls, South Dakota.  Compl. ¶ 3.  Plaintiff's allegations that he is a citizen of Massachusetts and that Wells Fargo is a corporation with a principal place of business in South Dakota establishes diversity under 28 U.S.C. § 1332.

      *ii.*     *Plaintiff Has Improperly Named Harmon In An Attempt To Defeat Diversity*

8.      A civil case involving a controversy between citizens of different states and meeting the requisite jurisdictional amount, may be removed to a United States District Court by a non-resident defendant. See 28 U.S.C. §§ 1441(b); 1446; 1332.  This right of removal cannot be defeated by a fraudulent joinder of a non-diverse defendant "having no real connection with the controversy." Mills v. Allegiance Healthcare Corp., 178 F. Supp. 2d 1, 4 (D. Mass. 2001) (quoting Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921)).  A joinder is a sham and fraudulent if it is "without any reasonable basis in fact and without any purpose to prosecute the cause in good faith against the [defendant]." Id.

9.      "The linchpin of the fraudulent joinder analysis is whether the joinder of the non-diverse party has a reasonable basis in law and fact." Mills, 178 F. Supp. at 4. "Although the First Circuit has not articulated a standard for evaluating a claim of fraudulent joinder, it has stated in dicta that 'a finding of fraudulent joinder bears an implicit finding that the plaintiff has failed to state a cause of action against the fraudulently joined defendant.'" Mills, 178 F. Supp. at 4 (quoting Polyplastics, Inc. v. Transconex, Inc., 713 F.2d 875, 877 (1st Cir.1983)).  A mere theoretical possibility of recovery is not enough to prevent removal. See Mills, 178 F. Supp. at 5 (citation omitted).  The primary concern is whether plaintiffs' claim was brought in good faith. Coventry Sewage Assocs. v. Dworkin Realty Co., 71 F.3d 1, 6 (1st Cir.1995).  In making that determination, a court may look beyond the allegations in the complaint. Wecker v. Nat'l Enameling & Stamping Co., 204 U.S. 176, 181 (1907).

10.     Plaintiff's claims against Harmon have no reasonable basis in fact or law; rather, Plaintiff asserts the claim in a thinly-veiled attempt to defeat diversity jurisdiction knowing full well that this Court already dismissed Plaintiff's first Complaint based on the same legal theory and merits.  Plaintiff's motivation for including Harmon in this lawsuit is

readily apparent when considering this Court's prior order rejecting the same legal theories Plaintiff has once again submitted in this new Complaint. In an attempt to avoid dismissal, Plaintiff added Harmon in the hopes that would keep the case in state court and away from the scrutiny of this Court. This attempt to defeat jurisdiction is not made in good faith and should not defeat this Court's jurisdiction.

11.     Beyond Plaintiff's clear motivation for asserting a trumped up G.L. c. 93A claim against Harmon, the claim is flawed and ripe for immediate dismissal. Plaintiff's sole claim against Harmon is that Harmon improperly accelerated Plaintiff's note because the note, according to Plaintiff, could not be accelerated due to an allegedly deficient G.L. c. 244, § 35A notice of right to cure letter sent by Wells Fargo to Plaintiff. Thus, Plaintiff's only claim against Harmon is predicated exclusively upon a letter sent by Wells Fargo. In other words, Plaintiff says that Wells Fargo – not Harmon – sent a deficient 35A letter. Plaintiff's claim against Harmon fails factually because he improperly attributes conduct to Harmon, where Harmon merely provided notice of another's conduct. Indeed, Harmon is not the owner of the Note and did not accelerate Plaintiff's note. Instead, Harmon merely provided notice of acceleration as an agent acting on behalf of the note holder.

12.     In addition to Plaintiff's claim against Harmon lacking factual support, it also lacks a sustainable legal basis. As the Supreme Judicial Court established in U.S. Bank National Association v. Schumacher, G.L. c. 244, § 35A does not relate to the foreclosure of mortgages by power of sale. 467 Mass. 421, 431 (2014). It is therefore improper to challenge a lender's right to accelerate a note "by arguing that the notice of his ninety-day right to cure a default, issued pursuant to G.L. c. 244, § 35A was deficient . . . ." Id. at 429.

6

13.     The relevant provisions and alleged deficiencies in Wells Fargo's 35A letter are nearly identical to the letter in Schumacher, which the Supreme Judicial Court relied upon to uphold the trial court's decision in favor of the lender, U.S. Bank.  In both cases, MERS was the mortgagee of record, as demonstrated through later assignments, when Wells Fargo sent notice of default and right to cure letters.  In both cases, the note holder later received an assignment of the mortgage from MERS and began foreclosure proceedings under the power of sale.  Where the Supreme Judicial Court affirmed the trial court's judgment, it held that the borrower in Schumacher could not "engraft the required notice provisions of § 35A onto the power of sale."  See Schumacher, 467 Mass. at 430.  Plaintiff should not be allowed to do so here, especially where his claim against Harmon is based on a letter send by Wells Fargo.

14.     As a final matter, Plaintiff misstates additional reasons why Wells Fargo's 35A letter is allegedly deficient.  Plaintiff alleges that the letter fails to list the sum of money required to cure the default and also fails to provide notice that the mortgagee may take steps to terminate Plaintiff's ownership of the property at issue by failing to cure his default.  See Compl. ¶¶ 51 (b) & (c), 52.  A simple review of Wells Fargo's 35A letter reveals that both of these provisions are present.  See Exhibit B, Wells Fargo's Notice of Right to Cure Letter dated November 29, 2010.[2]

### iii.     *The Amount In Controversy Exceeds $75,000*

15.     In calculating the amount in controversy, the Court should consider the total amount of monetary relief that the plaintiff seeks to recover, or the financial impact the relief sought would have on the defendant.  See Richard C. Young & Co. v. Leventhal, 389 F.3d 1, 3 (1st Cir. 2004) (The amount is measured by "the judgment's pecuniary consequences to those

---

[2] Plaintiff included this letter as Exhibit 2 to his Complaint, but failed to provide the letter's second page, which includes language regarding the potential legal consequences of Plaintiff failing to cure his default.

involved in the litigation."); see also Dept. of Recreation & Sports v. World Boxing, 942 F.2d 84, 90 (1st Cir. 1991). When a plaintiff seeks equitable relief, "the amount-in-controversy is 'measured by the value of the object of the litigation.'" Aliberti v. GMAC Mortg., LLC, 779 F. Supp. 2d 242, 245 (D. Mass. 2011) (quoting Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977)); see McKenna v. Wells Fargo Bank, N.A., 693 F.3d 207, 210 (1st Cir. 2012) (injunctive relief); Morse v. Residential Credit Solutions, Inc., 2012 U.S. Dist. LEXIS 17324, 2012 WL 458492, at *1 (D. Mass. Feb. 13, 2012) (declaratory judgment); Bedard v. Mortg. Elec. Registration Sys., Inc., 2011 U.S. Dist. LEXIS 51800, 2011 WL 1792738, at *1 (D.N.H. May 11, 2011) (injunctive relief) (citing Hunt, 432 U.S. at 347); see also Cohn v. Petsmart, Inc., 281 F.3d 837, 840 (9th Cir. Idaho 2002) (citing Hunt, 432 U.S. at 347) (upholding removal where amount in controversy measured by value of "object" of litigation); Leininger v. Leininger, 705 F.2d 727 (5th Cir. 1983) (same); Martinez v. BAC Home Loans Servicing, LP, 777 F. Supp. 2d 1039, 1043 (W.D. Tex. 2010) ("The proper measure of the amount in controversy is the value of the property at issue when the right the plaintiff seeks to protect or enforce is the right to peaceful possession of a home."); Pineda v. CitiMortgage, Inc., 2012 U.S. Dist. LEXIS 79895 (N.D. Cal. June 8, 2012) (removal proper because value of property exceeded jurisdictional minimum).

16. Plaintiff alleges that he refinanced his home mortgage in 2005 with a loan in the amount of $160,000 (the "Loan"). Compl. ¶ 7. Plaintiff argues that Wells Fargo, as servicer of the Loan, must modify the Loan in accordance with HAMP. See Compl. ¶¶ 25, 30-34, 44. He further alleges that Wells Fargo's failure to modify the Loan has caused him damage. Plaintiff asserts a claim under G.L. c. 93A and seeks unspecified actual and compensatory damages, treble damages, costs, interest, and attorney's fees. He also seeks "*An order that*

*[Wells Fargo] provide Newell with a loan modification compliant with all applicable HAMP, federal, Massachusetts, or other applicable guidelines*".   See Compl. at p. 19, Wherefore Clause (emphasis added).   By seeking an order requiring Wells Fargo to modify the Plaintiff's loan, Plaintiff seeks equitable relief.   The only allegation that Plaintiff makes regarding the Loan established its value at $160,000.   The original amount of the mortgage loan "suffices to show by a preponderance of the evidence that the fair market value of [the borrowers'] property exceeded $75,000 at the time this action was removed."   Bedard v. Mortg. Elec. Registration Sys., Inc., 2011 WL 1792738, at *2-3 (D. N.H. May 11, 2011) (citing cases); see also McKenna, 693 F.3d at 212. (favoring "face-value-of-the-loan rule" in dicta).   In this case, Plaintiff's mortgage loan is alleged to be $160,000.   Compl. ¶ 7.   Because the $160,000 Loan is the "object of this litigation," and it exceeds $75,000, the amount in controversy requirement is met.

17.     As a final demonstration that the amount in controversy requirement is met here, by seeking a loan modification, Plaintiff effectively seeks to prevent foreclosure. Accordingly, although Plaintiff does not so explicitly state, he seeks to prevent the realization of a security interest in the underlying property.   Therefore, the amount at issue in this case is the value of the security interest in the amount of $160,000; a value exceeding the amount in controversy requirement.

IV.     Conclusion

18.     Wells Fargo respectfully requests that this Court assume jurisdiction over this matter and that no further proceedings be held in the Norfolk County Superior Court.   To the extent that Plaintiff challenges this removal, Wells Fargo requests the opportunity to brief and argue any issues or questions regarding this Court's jurisdiction.

Respectfully submitted,
America's Servicing Company, A Division of
Wells Fargo Bank, N.A.
By its Attorneys,


*/s/ David. E. Fialkow*

David E. Fialkow (BBO #666192)
david.fialkow@nelsonmullins.com
Edward J. Mikolinski (BBO#687770)
edward.mikolinski@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Post Office Square, 30th Floor
Boston, Massachusetts 02109
(617) 573-4700

Dated:  February 12, 2015                     (617) 573-4710 (fax)

10